## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                       No. CR 15-0475 JB

MARK HERRERA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before Court on the Defendant's Objections to Presentence Report, filed May 1, 2015 (Doc. 22)("Objections"). The Court held a sentencing hearing on May 13, 2015. The primary issue is whether the United States Probation Office ("USPO"), in the Presentence Investigation Report (disclosed April 17, 2015)("PSR"), properly increased Defendant Mark Herrera's Criminal History because of his Colorado state court conviction for Theft/Trade Secrets, when sentencing occurred on November 5, 2004, and the commencement of this federal offense, for which the Court is sentencing him, occurred on August 1, 2014. The Court concludes that the USPO properly considered Herrera's conviction for Theft/Trade Secrets under U.S.S.G. § 4A1.1(b), because his state sentencing took place less than ten years before the commencement of this federal offense. Consequently, the Court will overrule Herrera's Objection to the PSR's calculation of the criminal history.

## FACTUAL BACKGROUND

The Court takes its facts from the Presentence Investigation Report, disclosed May 8, 2015, that the USPO prepared. On July 28, 2014, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") received information that an individual known as "Q" was distributing large

quantities of heroin in the greater Albuquerque, New Mexico, area and possessed firearms. See PSR ¶ 10, at 3. The ATF's investigation found that "Q" was Herrera, who also had a Facebook profile for "Marq Baca." See PSR ¶ 10, at 3. Between April, 2014, and June, 2014, Herrera posted several photographs of semiautomatic weapons and large quantities of cash on Facebook. See PSR ¶ 11, at 4.

The ATF obtained a search warrant and detained Herrera in his vehicle on August 1, 2014. See PSR ¶ 12, at 4. Herrera admitted that he had roughly one ounce of heroin in the vehicle, as well as marijuana and a Glock .45 caliber pistol at his home. See PSR ¶ 12, at 4. ATF officers searched Herrera's vehicle and house the same day. See PSR ¶ 12, at 4. The vehicle contained more than one ounce[1] of heroin, along with syringes, a digital scale, and sandwich baggies "consistent with the sale of narcotics." PSR ¶ 13, at 4. The house produced two bags of heroin with a combined gross weight of six ounces,[2] an unspecified amount of marijuana, $5,000.00 in cash, needles, scales, packaging materials, and "grinders"[3] with heroin residue. See PSR ¶ 14, at 4. The house and garage also contained a .45 caliber pistol loaded with sixteen rounds of ammunition -- a "large capacity magazine" -- two additional magazines with ten rounds of ammunition, and sixty-five rounds of nine millimeter ammunition. See PSR ¶¶ 14-17, at 4. Herrera then provided a statement to the Rio Rancho Police Department stating

---

[1]The ATF did not obtain a drug laboratory report on the weight of this sample of heroin, but the Amended PSR states that it was "at least one ounce." See Amended PSR ¶ 13, at 4.

[2]The ATF did not obtain a drug laboratory report on the weight of this larger sample of heroin. The Amended PSR states that the "combined gross weight of the heroin located in the vehicle and residence is 7 ounces." See Amended PSR ¶ 15, at 4.

[3] Heroin dealers often use coffee grinders to cut pure heroin with a dilutant, such as baking soda or flour. See Press Release, Drug Enforcement Administration, Drug Enforcement Task Force Uncovers Heroin Mill in the Bronx, NY: $8 Million Worth of Heroin Seized (Jan. 31, 2014)(available at http://www.dea.gov/divisions/nyc/2014/nyc013114.shtml).

that he sold roughly six to eight ounces of heroin every two to three days, and kept the firearm for protection.  See PSR ¶ 17, at 4.

## PROCEDURAL BACKGROUND

Herrera was charged, under Count 1 of the Information, filed February 13, 2015 (Doc. 12)("Information"), with unlawful possession of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  See Information, at 1.  He was charged, under Count 2, with being a felon in possession of a firearm or ammunition "which has been shipped or transported in interstate or foreign commerce," in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)."  Information at 1. Herrera pled guilty to the Information's charges on February 13, 2015.  See Plea Minute Sheet at 1, filed February 13, 2014 (Doc. 20).

The PSR notes that the base offense level for the 18 U.S.C. § 922(g)(2) violation here, which involved a prior felony conviction for a crime of violence and a high-capacity magazine, is 22 under U.S.S.G. § 2K2.1(a)(3).  See PSR ¶ 25, at 5.  It adds that, because Herrera possessed a firearm in connection with drug trafficking, 4 additional levels are applied under U.S.S.G. § 2K2.1(b)(6)(B).  See PSR ¶ 26, at 5.  The PSR then applies a 2-level reduction under U.S.S.G. § 3E1.1(a) for clearly demonstrating an acceptance of responsibility and a 1-level reduction under § 3E1.1(b) for timely notifying authorities of an intent to plead guilty.  See PSR ¶¶ 32-33, at 6.  The PSR thus calculates Herrera's total base offense level as 23.  See PSR ¶ 34, at 6.

The PSR states that Herrera's criminal history score is eight, which establishes a criminal history category of IV under U.S.S.G. § 5A.   See PSR ¶ 43, at 9.  It bases its estimate on three separate convictions.  First, Herrera was arrested for Theft/Trade Secrets for taking three 12-packs of beer from a convenience store on March 25, 2004.  See PSR ¶ 37, at 6.  He was sentenced to twelve months-probation on November 5, 2004.  This offense increased the

- 3 -

criminal history score by 2 points.  See PSR ¶ 37, at 6.  Second, Herrera was sentenced to three years of community correction on April 17, 2006, after he committed an armed Robbery in Brighton, Colorado.  This offense increased his criminal history score by 3 points.  See PSR ¶ 38, at 7.  Third, Herrera was sentenced to one year in custody and two years of parole on August 2, 2006 for escaping from a community corrections housing unit in Brighton, Colorado.  This offense increased his criminal history score by 2 points.  See PSR ¶ 40, at 8.  The PSR states that the United States Sentencing Guidelines range for an offense level of 23 and a criminal history category of IV is 70 to 87-months imprisonment.  See PSR ¶ 83, at 21.

Herrera filed his Objections to the PSR on May 1, 2015.  First, he argues that his Theft/Trade Secrets offense took place on March 25, 2004, more than ten years before the initial date of his present offense.  See Objection at 2.  Second, he points out that he was in state custody at the time the PSR listed a conviction for Forgery 2.  See Objection at 2-3.  Finally, he objects to the inclusion of a possible pending warrant out of Giplin County, Colorado.  He argues that he was never prosecuted, and that he would not have been able to leave parole in 2012 and move to New Mexico if it were still active. See Objection at 2-3.

The USPO issued an Addendum to the PSR addressing Herrera's Objections on May 8, 2015.  See PSR.  First, the Addendum states that, under U.S.S.G. § 4A1.1(b), the sentencing court must use the date of sentencing rather than the date of arrest to determine a past conviction's age.  See Addendum at 1.  Because Herrera was sentenced for Theft/Trade Secrets on November 4, 2004, and commenced the federal offense for which the Court is sentencing him by August 1, 2014, the Addendum explains that less than ten years had passed and the Theft/Trade Secrets conviction would result in criminal history points.  See Addendum at 1.  Second, the Addendum confirmed that Herrera was in state custody at the time of the alleged

Forgery 2 conviction, and thus removed it from the PSR and the criminal history calculation. See Addendum at 1.  Finally, the Addendum states that the USPO verbally verified that the warrant was active with an unnamed Gilpin County court representative.  Although it notes that the County Court said it would follow up with written verification, the USPO never received it. See Addendum at 2.

The Court held a sentencing hearing on May 13, 2015.  See Transcript of Hearing (taken May 13, 2015)("Tr.").[4]  The Court began the hearing by asking whether the changes in the Addendum resolved all of Herrera's objections.  See Tr. at 2:3-6 (Court).  Herrera noted that they had, with the "exception of that active warrant, which is in the name of [Herrera's] brother," but went on to explain that the warrant "doesn't have anything to do with this case."  Tr. at 2:7-11 (Baez).  He conceded that no changes had to be made to the Addendum, confirmed that there was "no objection at the present time for the Court to deal with," and withdrew his prior objections.  Tr. at 3:5-18 (Court, Baez).  The Court then adopted the PSR's factual findings and Guidelines applications as its own.  See Tr. at 10:8-14 (Court).   The Court discussed the Guidelines, the § 3553(a) factors, and other concerns before sentencing Herrera to 70 months-imprisonment, the low end of the Guidelines range.  See Tr. at 11:8-9 (Court).  It found that the sentence was "adequate to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, both at a specific and general level, [and] protect the public."  Tr. at 11:9-13 (Court).

## LAW REGARDING PRIOR CRIMINAL HISTORY

The Guidelines require courts to consider certain aspects of the defendant's prior criminal history during sentencing.  See U.S.S.G. § 4A1.  Rule 4A1.1 states that courts must:

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

U.S.S.G. § 4A1.1(a)-(c).  Convictions can only be considered, however, if they occurred within certain time periods.  The Definitions and Instructions Guideline explains that:

(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever impose0d, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3) Any prior sentence not within the time periods specified above is not counted.

U.S.S.G. § 4A1.2(e)(1)-(3).  See U.S.S.G. § 4A1.1 cmt. app. n.2 ("A sentence imposed more than ten years prior to the defendant's commencement of the instant offense is not counted.").

The Guidelines' use of "imposed within" instead of "convicted within" is significant. U.S.S.G. § 4A1.2(e)(1)-(3).  The United States Court of Appeals for the Tenth Circuit has explained that this provision "establishes the chronology of sentencing rather than the commission of the crimes as controlling."  United States v. Walling, 936 F.2d 469, 471 (10th Cir. 1991)(Anderson, J.), holding modified by United States v. Torres, 182 F.3d 1156 (10th Cir. 1999)(McKay, J.).

## ANALYSIS

The Court concludes that the USPO properly considered Herrera's conviction for Theft/Trade Secrets under U.S.S.G. § 4A1.1(b).  Herrera was sentenced to twelve-months'

probation[5] for that crime on November 4, 2004.  See PSR at 1.  His federal offense, for which the Court is sentencing him, began on August 1, 2014.  The Colorado state court sentencing thus took place within ten years of the commencement of the federal offense.  See PSR at 1.  The state sentence is a "prior sentence that was imposed within ten years of the defendant's commencement of the instant offense," and it is thus counted under the Guidelines.  U.S.S.G. § 4A1.2(e)(2).  See United States v. Walling, 936 F.2d at 471 (holding that even an older sentence based on a crime committed after the new offense is considered a "prior sentence").

The Addendum mooted Herrera's second objection by removing the Forgery 2 conviction from his criminal history report.  See Tr. at 2:7-11 (Baez).  The conviction will play no role in the Court's sentence.

The Addendum did not resolve the dispute surrounding the outstanding arrest warrant, but the dispute was irrelevant to the sentencing.  The PSR still contains a reference to the outstanding warrant for Herrera's arrest.  See PSR ¶ 46, at 9.  Herrera maintained at the hearing that the warrant listed his brother's name and date of birth.  See Tr. at 2:7-11 (Baez).  He also conceded, however, that it did not "have anything to do with this case."  Tr. at 2:7-11 (Baez).

---

[5]The Theft/Trade Secrets conviction increased Herrera's criminal history by 2 points, despite the fact that he was not sentenced to "imprisonment of at least sixty days." U.S.S.G. § 4A1.1(b).  Such a light sentence would normally result in only 1 criminal history point under U.S.S.G. § 4A1.1(c).  Here, however, Herrera violated his probation multiple times, and the state court revoked his probation and sentenced him to one year in jail on April 17, 2006.  The Guidelines instruct the Court to, "[i]n the case of a prior revocation of probation . . . add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable."  U.S.S.G. § 4A1.2(k)(1).  The relevant date remains "the date of the original sentence," in this case November 5, 2004.  U.S.S.G. § 4A1.2(k)(2).

Herrera withdrew his objection to the outstanding warrant at the sentencing hearing, so the Court

need not decide whether there is sufficient evidence to include it in the PSR.[6]

      **IT IS ORDERED** that the Defendant's Objections to Presentence Report, filed May 1,

2015 (Doc. 22), are denied.

_____
UNITED STATES DISTRICT JUDGE

---

    [6]The cases discussing warrants' existence generally do not involve PSRs.  In United States v. Tapia, No. 06-20072-JWL, 2007 WL 3487151 (D. Kan. Nov. 13, 2007)(Lungstrum, J.), for example, the defendant moved to suppress evidence obtained from a search of his home on the grounds that the officers entered without a warrant.  See 2007 WL 3487151, at *5.  He noted that the government failed to produce a copy of the actual warrant at his hearing.  The court rejected his argument, noting that the "failure of the government to introduce the warrant at the hearing is insufficient to prove there were no warrants when other evidence establishes the warrants did exist."  2007 WL 3487151, at *5.  In United States v. King, No. 3:06CR141, 2007 WL 1830761 (E.D. Tenn. June 22, 2007)(Phillips, J.), the defendant moved to suppress evidence of firearms seized from his house on the grounds that the officers lacked a warrant.  See 2007 WL 1830761, at *15.  The government could obtain only a faxed copy of the original warrant.  The court rejected the defendant's challenge, citing the faxed copy and noting that police officers had "testified in great detail about obtaining the arrest warrant."  2007 WL 1830761, at *12.

    The Tenth Circuit has "consistently held that hearsay statements may be considered at sentencing if they bear some minimal indicia of reliability."  United States v. Damato, 672 F.3d 832, 847 (10th Cir. 2012)(Lucero, J.).

    The evidence here is relatively weak compared to the evidence in United States v. Tapia and United States v. King.  The only evidence of the outstanding warrant here is a verbal statement from an unnamed Gilpin County court representative.  See Addendum at 2.  The Court does not know the recipient of the statement, as the Addendum described it in wholly passive terms.  See Addendum at 2 ("Contact was made with a Giplin County representative . . . .").  Although the Gilpin County court representative had no incentive to misstate Herrera's record, his name is similar to his brother's name, and the judicial system has apparently confused the two in the past.  See Letter from Matthew Herrera to the Court, filed May 7, 2015 (Doc. 23-1)(taking responsibility for Forgery 2 conviction initially attributed to Defendant Mark Herrera).  The Court does not believe the United States has presented sufficient evidence for the Court to find that the outstanding warrant existed by a preponderance of the evidence if the issue was contested.  The warrant's existence is not, however, contested; Herrera withdrew his objection at the hearing.  See Tr. at 3:19-20 (Baez).  Moreover, this issue does not affect the Court' sentence.

*Counsel:*

Damon P. Martinez
   United States Attorney
Presiliano Torrez
Lynn Wang
   Assistant United States Attorneys
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Stephen P. McCue
   Federal Public Defender
Sylvia A. Baiz
   Assistant Federal Public Defender
Albuquerque, New Mexico

       *Attorneys for the Defendant*